UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FREDRICK HINES                                    CIVIL ACTION

VERSUS                                            NO. 06-3772

BURL CAIN                                         SECTION "A" (2)

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, Fredrick Hines, is a prisoner who has been convicted of looting during the immediate aftermath of Hurricane Katrina. Hines is currently incarcerated in the Catahoula Correctional Center in Harrisonburg, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Louisiana State Penitentiary Warden Burl Cain, Orleans Parish Criminal Sheriff Marlin Gusman and Orleans Parish Prison Warden Bill Hunter. Hines alleges that, following his arrest for looting in early September 2005, he was incarcerated under unconstitutional conditions for three (3) days in a post-hurricane temporary detention facility located at the Greyhound bus station in New Orleans. He seeks damages and injunctive relief, "terminating Warden Cain of his official capacity as Warden at Louisiana State Penitentiary, until this matter is resolved." Record Doc. No. 1, Complaint.

On September 28, 2006, I conducted a telephone conference in this matter. Participating were plaintiff pro se; Freeman R. Matthews, representing the Orleans Parish defendants; and Phyllis Glazer and Michael Keller, representing Warden Cain. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Plaintiff testified that he is currently incarcerated based on his August 15, 2006 conviction in Jefferson Parish for looting[1] in the immediate aftermath of Hurricane Katrina, which struck the New Orleans metropolitan area with catastrophic results on August 29, 2005. He said that he was sentenced to serve six years on a twelve-year sentence in prison for that offense.

---

[1]Looting is defined as

the intentional entry by a person without authorization into any dwelling or other structure belonging to another and used in whole or in part as a home or place of abode . . . [or] a place of business, . . . in which normal security of property is not present by virtue of a hurricane, flood, fire, act of God, or force majeure of any kind, . . . and the obtaining or exerting control over or damaging or removing property of the owner.

La. Rev. Stat. § 14:62.5(A). The penalties for conviction are a fine of up to $10,000 or up to 15 years of imprisonment at hard labor, or both. Id. § 14:62.5(B). If the looting occurred during a government-declared state of emergency, as occurred in the aftermath of Hurricane Katrina, the law provides mandatory penalties of at least $5,000, up to $10,000, and at least 3 years of imprisonment at hard labor, up to 15 years, without benefit of probation, parole or suspension of sentence. Id. § 14:62.5(C).

In his written submissions to the court, plaintiff stated:

[O]n September 8, 2005, I was transferred from Jefferson Parish Correctional Center to the Greyhound bus station. While in the custody of the department of corrections and being overseen by officers from the Louisiana State Penitentiary in Angola, we were subjected to numerous acts of cruel and unusual punishment. Upon my arrival at the bus station I was treated in a very inhumane manner[,] including and not limited to corporal punishment and torture, along with numerous types and acts of physical abuse. This cruel treatment began during the night of September 8, 2005. We were forced to sleep in barbed wire fenced cages on the concrete covered with chemicals, i.e., oil, fuel, grease, etc. with no type of protection from the potentially hazardous materials. We were not provided mats or blankets and were forced to endure extremely cold,[2] hard and painful days of physical and emotional abuse. There was no medical staff available, no reasonable concern for our safety, which resulted in deliberate indifference on the part of all the defendants involved. We were ordered to clean ourselves outside in an open portable toilet apparatus, while we were sprayed with a basic garden hose. During these actions I was subjected to humiliation, embarrassment, and deprivation of basic human needs. Every detainee/evacuee was subjected to these actions and conduct. The Defendants, Burl Cain, Marlon [sic] Gusman, and Bill Hunter actually condoned this activity. To that extent, the defendants acted as willing participants to violate the civil rights of detainees. As a result of this treatment, I suffer from bouts of mental anguish, psychological trauma, anxiety, paranoia and physical injury. Defendants actively conspired with his [sic] employees/subordinates etc. to the point of allowing the complained of incidents, in their official and individual capacities. These are the facts of the incidents as they occured [sic] during my temporary incarceration in custody of defendants Burl Cain, Marlon [sic] Gusman and Bill Hunter and the staff.

---

[2]Hines testified that he was taken to the Greyhound bus station in New Orleans on September 7, 2005 and stayed there for three days. According to weather history records for New Orleans, the lowest nighttime temperatures during that time period ranged from 75 to 75.9 degrees Fahrenheit, while the daily high temperatures ranged from 88 degrees to 91 degrees Fahrenheit. These records are publicly available at http://www.almanac.com/weatherhistory.

Record Doc. No. 9, at pp. 5-6.

During the September 28, 2006 telephone conference, Hines testified that he was arrested on September 4, 2005,[3] about a week after Hurricane Katrina struck the New Orleans area, on the looting charge. He stated that he was initially taken to the Jefferson Parish jail in Gretna, Louisiana, after his arrest on that charge and was then taken to the temporary detention facility at the Greyhound bus station in New Orleans on September 7, 2005. He acknowledged that he had stated in his written submissions that he was taken to the bus station on September 8th, but he testified that September 7th was the correct date.

Hines testified that he was kept at the bus station for only about three days and was then transferred to Hunt Correctional Center in St. Gabriel, Louisiana. He stated that his claim in this case is based exclusively on the conditions he experienced at the temporary bus station holding facility.

Asked to describe the conditions about which he complains in this case, plaintiff said that the bus station was "like a dog cage" and that dogs were kept on the other side of the prisoners. He testified that the dogs were housed in a cage separate from the prisoners.

---

[3]His complaint states that he was arrested on September 5, 2005.

4

Hines also testified that the prisoners were placed against the fence at gunpoint and told not to move.  He stated that the prisoners were made to take off their clothes so that the prison guards could perform anal cavity searches and take pictures.  He testified that the prisoners were placed in a fenced area, similar to a dog cage, and were forced to sleep on the ground "with . . . oil and bird manure."

Asked what he meant by the allegation in his papers that he was subjected to "corporal punishment and torture," plaintiff said, "they pushed our face to the fence for no reason, they told us to keep our head, our nose on the fence, pushing us around . . . pushing people down and stuff like that."  Hines stated that he did not suffer any injuries as a result of this treatment.  He testified that most of the injuries he suffered were emotional abuse, anxiety, humiliation and embarrassment.

Plaintiff said that only one portable toilet was available at the bus station and that the door to that toilet was kept open.  He testified that the prisoners were made to bathe "with a hosepipe through the fence" while standing in a line.

Asked what physical injuries he suffered as a result of the conditions at the bus station, Hines testified that he "had a bad hip and can't be on the ground like that."  He stated that he had a chipped bone in his left hip, which was diagnosed in 2002.  He testified that his shoulder was scraped from sleeping on the concrete, but "it's gone away since then."  He said he suffered no other physical injuries.

5

Asked about the contempt of court charge mentioned in his written submissions, Hines said that "when we got back from Hunt's [Correctional Center], me and my brother spoke a word about his paperwork and the judge said what we was talking about and they gave us six months . . . for talking on the same charge."

## ANALYSIS

I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the

6

plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005.  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Haddix v. Kerss, No. 04-41636, 2006 WL 2861110, at *2 (5th Cir. Oct. 9, 2006); Wilson v. Barrientos, 926 F.2d 480, 482 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).   "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269.   A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[4]

---

[4]Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

II.    <u>NO PHYSICAL INJURY</u>

Initially, plaintiff's complaint is deficient under Section 1983 insofar as he seeks damages because he fails to allege physical injury sufficient to support his claim for monetary damages.  Specifically, the Prison Litigation Reform Act of 1996 includes the following requirement in 42 U.S.C. § 1997e(e):  "<u>No</u> Federal civil action <u>may be brought</u> by a prisoner confined in a jail, prison, or other correctional facility, <u>for mental or emotional injury</u> while in custody without a prior showing of physical injury." (Emphasis added).

Broadly construing plaintiff's complaint, as amended by his <u>Spears</u> testimony, the only injuries Hines alleged in this case are a scraped shoulder that has healed and some temporary aggravation to a pre-existing hip ailment caused by sleeping on the ground, as well as embarrassment and anxiety.  In several recent decisions, the Fifth Circuit has enforced the statutory physical injury requirement for prisoners who seek damages for intangible emotional or psychological harm, such as has been alleged by Hines in this case.  <u>E.g.</u>, <u>Herron v. Patrolman #1</u>, 111 Fed. Appx. 710, 2004 WL 2244220, at *2 (5th Cir. 2004);  <u>Harrison v. Smith</u>, 83 Fed. Appx. 630, 2003 WL 22946387, at *1 (5th Cir. 2003); <u>Criollo v. Wilson</u>, 76 Fed. Appx. 576, 2003 WL 22295491, at *1 (5th Cir. 2003); <u>Atkinson v. Johnson</u>, 74 Fed. Appx. 365, 2003 WL 22012901, at *1 (5th Cir. 2003); <u>Herman v. Holiday</u>, 238 F.3d 660, 665 (5th Cir. 2001).

The Fifth Circuit has explained that the physical injury required by Section 1997e(e) must be more than de minimis, but need not be significant. Alexander v. Tippah County, 351 F.3d 626, 631 (5th Cir. 2003). Thus, in Alexander, the court found that Section 1997e(e) precluded plaintiffs from recovering for their emotional and mental injuries, when the only physical injuries they had suffered were nausea and one incident of vomiting. Id. Similarly, in Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997), the court held that a prisoner's ear that was sore and bruised for three days was merely a de minimis injury.

The district courts in this circuit have consistently followed these Fifth Circuit precedents. See Galo v. Blanco, No. 06-4290, 2006 WL 2860851, at *4 (E.D. La. Oct. 4, 2006) (Engelhardt, J.) (a few scrapes and a rash are de minimis injuries); Aleem v. Thompson, No. 06-CV-0608, 2006 WL 2989250, at *3 (W.D. La. Oct. 3, 2006) (Kirk, M.J.) (pretrial detainee who claimed that he was punched, kicked and thrown face-down on the floor, but did not state what, if any, physical injuries he suffered was barred by Section 1997e(e) from recovering for mental anguish).

In the instant case, the only physical injuries alleged by Hines as a result of having slept on a concrete floor or the other conditions about which he complains were some temporary discomfort in his hip and a scraped shoulder that has healed. The only other harms he alleged were embarrassment and anxiety. As Section 1997e(e) provides and

10

Fifth Circuit case law makes clear, Hines is precluded as a matter of law from recovering damages for the psychological or other emotional injury he has asserted.

However, this does not mean that Hines is precluded from any relief whatsoever. The request for relief contained in his complaint includes not only monetary compensation but also injunctive relief.  The Fifth Circuit and other federal courts which have considered this issue have uniformly held that Section 1997e(e) precludes only the recovery of damages for mental or emotional injury and not all other forms of relief.  See Herman, 238 F.3d at 665-66 (while Section 1997e(e) precludes recovery of damages for emotional or mental injury without a showing of physical injury, it does not bar injunctive or declaratory relief); Allah v. Al-Hafeez, 226 F.3d 247, 251-52 (3d Cir. 2000) (claims for nominal and punitive damages for violation of First Amendment free exercise of religion rights were not barred by Section 1997e(e) prohibition of recovery of emotional injury compensatory damages); Jones-Bey v. Cohn, 115 F. Supp. 2d 936, 939 (N.D. Ind. 2000) (Section 1997e(e) did not preclude Section 1983 action in which inmate sought injunctive relief and damages other than for mental or emotional distress, even without showing of prior physical injury).

While Hines has failed to allege physical injury sufficient to permit him to recover general damages for psychological distress or emotional suffering, his claims are not barred in their entirety.  Section 1997e(e) does not preclude him from recovering the

11

injunctive relief sought in his written submissions or nominal damages such as $1 for violation of his constitutional rights, if appropriate and to the extent he otherwise states cognizable claims for relief under Section 1983.  For the following reasons, however, Hines states no such cognizable claims.

III.    <u>CONDITIONS OF CONFINEMENT</u>

Plaintiff asserts that he was subjected to unconstitutionally unsanitary conditions while incarcerated at the temporary jail at the Greyhound bus station for only three days shortly after Hurricane Katrina.  Plaintiff's claim of inadequate conditions of confinement drips with unacceptable irony.  He was held in the temporary detention facility at the bus station, where the conditions about which he complains were caused by the catastrophic aftermath of Hurricane Katrina and the need to evacuate him from the Jefferson Parish Jail.  He was being held on a charge of looting (of which he was later convicted) during a state of emergency in the aftermath of the hurricane.  He took advantage of those emergency conditions to steal the property of people who had already been victimized in the hurricane and its aftermath, at a time when law enforcement officials and local jails had also been adversely affected by the hurricane.

Hines was a pretrial detainee for the time period about which he complains. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, however, the standard of liability is the same for episodic acts or omissions of jail officials of the type

12

alleged in this case.  Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999); Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996).  In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Id.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the conditions he described were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice."  Id. at 645. On the contrary, in this case, the acts occurred in a state of emergency when a temporary detention center had been erected on an exclusively short-term basis.  Thus, "'the complained-of harm is a particular act or omission of one or more officials,'" Olabisiomotosho, 185 F.3d at 526 (quoting Scott v. Moore, 114 F.3d 51, 53 (5th Cir.

1997)), and the deliberate indifference standard enunciated in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), applies.

As to Hines's particular claims, his allegations do not constitute violations of the Constitution.  Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994).  To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." <u>Alexander</u>, 351 F.3d at 630 (quoting <u>Woods v. Edwards</u>, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. <u>Farmer</u>, 511 U.S. at 847.  A prison official cannot be held liable "unless the official <u>knows of and disregards an excessive risk to inmate health or safety</u>; the official <u>must both be aware of facts</u> from which the inference could be drawn that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>." <u>Id.</u> at 837 (emphasis added).

14

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citing <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other citations omitted)) (emphasis added).   "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

In the instant case, the "deliberate indifference" standard applies because all of plaintiff's complaints concerning the conditions relate to jail officials' episodic acts or omissions, and no challenge is made to "the general conditions and restrictions of [plaintiff's] confinement, knowingly imposed." <u>Hamilton</u>, 74 F.3d at 104 n.3.  Thus, Hines must allege facts sufficient to establish that any defendant <u>knew</u> that plaintiff faced a <u>substantial risk</u> of <u>serious</u> harm and <u>disregarded that risk</u> by failing to take reasonable measures to abate it.

Plaintiff fails to allege any such facts when he complains about temporary conditions, including being held in a caged enclosure for three to four days, sleeping on the ground without a mattress or blanket during the New Orleans summer, using a

portable toilet with the door held open and bathing with a garden hose.  Hines alleges in his complaint, in a highly exaggerated manner, that he was "tortured" and subjected to corporal punishment.  He testified, however, that this meant that he was forced at some point to stand with his head or nose against the fence and was sometimes pushed around or pushed down.  He did not allege that he was injured in any way by these actions.

These allegations assert nothing more than a temporary discomfort that is insufficient to state a claim of constitutional dimension.  Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982).  Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Id.  Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).

Although the conditions he described may have been unpleasant, Hines has failed to allege either deprivations so extreme that they violate the Constitution or sufficiently serious harm resulting from these problems to meet the requirements of Farmer.  Accordingly, this claim does not rise to the level of constitutional violation.

A short-term sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation.  Davis, 157 F.3d at 1006; Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013

(6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).   "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Whitnack, 16 F.3d at 958. None of Hines's allegations about his three-day stay in the bus terminal establish constitutional violations.   See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Eady v. Head, No. CIVASA04CA0648 NN, 2006 WL 2663776, at *3 (W.D. Tex. Sept. 15, 2006) (Nowak, M.J.) ("Going without a shower and being exposed to the foul smell of a backed-up shower for two days on two separate occasions does not show deliberate indifference to Plaintiff's basic human needs or constitute cruel and unusual punishment in violation of the Eighth Amendment.").

It also cannot be said that Hines "face[d] a substantial risk of serious harm" in the constitutional sense from the temporary lack of a mattress for three days.   Although the Fifth Circuit has not yet addressed this question, the Sixth Circuit at least once and the Eighth Circuit repeatedly has held in recent years that deprivation of bedding for a limited period of time is not per se unconstitutional.   See Grissom v. Davis, No. 02-1916,

17

2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket was not a deprivation of basic human needs and did not cause plaintiff to suffer serious harm); O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping without mattress or blanket for four days on a concrete slab in cell located ten feet from exterior door during winter did not deny plaintiff the minimal civilized measures of life's necessities); Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress or blanket for two days was not unconstitutional when there was no evidence that inmate suffered any injury or adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety); Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress, pillow, sheets or blanket for four days, when plaintiff sought no treatment for any resulting medical condition or injury, was not unconstitutional).  Provision of bedding falls within those matters committed to prison administrators' sound discretion.  Kot v. Matty, No. 90-7644, 1991 WL 246906, at *2 (E.D. Pa. Nov. 15, 1991), aff'd, 980 F.2d 723 (3d Cir. 1992).

Although former Chief Judge Little of the Western District of Louisiana has declared that "[a] mattress is a basic human right, which must be provided to a detainee," the Fifth Circuit has not adopted his position and the cases that he cited to support that far-reaching proposition do not, on closer examination, mandate that conclusion.

18

Oladipupo v. Austin, 104 F. Supp. 2d 626, 639 (W.D. La. 2000) (Little, C.J.) ("Oladipupo I") (citing Thompson v. City of Los Angeles, 885 F.2d 1439, 1449 (9th Cir. 1989) ("valid Fourteenth Amendment claim where pretrial detainee forced to sleep on the floor for two nights"); Lyons v. Powell, 838 F.2d 28, 31 (1st Cir. 1988) ("pretrial detainee's allegation that he was forced to sleep on floor mattress sufficient condition to show deprivation of due process"); Anela v. Wildwood, 790 F.2d 1063, 1067 (3d Cir. 1986) ("allegation that City failed to provide bed or mattress to pretrial detainees states actionable constitutional claim"); Lareau v. Manson, 651 F.2d 96, 105 (2d Cir. 1981) ("prison's use of floor mattresses for pretrial detainees unconstitutional 'without regard to the number of days for which a prisoner is so confined'"); Martino v. Carey, 563 F. Supp. 984, 1002 (D. Or. 1983) ("fact that jail overcrowding forced some pretrial detainees to sleep directly on floor contributed to finding that overcrowded conditions violated detainees' Fourteenth Amendment rights"); Vazquez v. Gray, 523 F. Supp. 1359, 1365 (S.D.N.Y. 1981) ("use of floor mattresses for pretrial detainees unconstitutional")); Oladipupo v. Austin, 104 F. Supp. 2d 654, 659 (W.D. La. 2000) (Little, C.J.) ("Oladipupo II") (citing the same cases).

First, none of the cases cited by Chief Judge Little presents a factual situation akin to Hines's.  Second, those cases applied outdated legal standards different from the current "deliberate indifference" standard for an episodic omission by jail officials.  Thus,

19

I find the Eighth Circuit's reasoning and holdings in its recent cases more persuasive in the instant case than the Oladipupo decisions and cases cited therein.

Living in temporary conditions such as those described by Hines may be an inconvenience, but it was an inconvenience necessitated by Hurricane Katrina and the need in that emergency situation to apprehend and detain looters and other persons like Hines himself, who had seized upon the disaster to loot and otherwise engage in civil disturbances. Hines has not alleged sufficiently serious harm resulting from the temporary, three-day-long conditions to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement. Thus, Hines has not alleged a violation of a clearly established constitutional right.

In two cases, the Fifth Circuit has held that virtually permanent conditions of cells that contained excrement and other filth violate the Eighth Amendment. In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in Davis, the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and

bread loaf on the floor.'" Davis, 157 F.3d at 1004, 1006.  The appeals court quoted the

Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A filthy,

overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks

or months.'"  Id. at 1006 (quoting Hutto v. Finney, 437 U.S. 678, 686-87 (1978)).  The

Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal

civilized measure of life's necessities'" when he  was confined in the cell for only three

days.  Id. (quoting Wilson, 501 U.S. at 304).

In the instant case, Hines was confined in the temporary bus station holding

facility for only three days under the emergency conditions caused by Hurricane Katrina.

Because his case clearly falls within the ambit of the Fifth Circuit's holding in Davis, id.,

that a three-day confinement in such conditions is not unconstitutional, this claim

advances a legally frivolous argument and fails to state a claim for relief under Section

1983.

IV.   QUALIFIED IMMUNITY

Even if Hines could somehow state a claim that his constitutional rights had been

violated under these extraordinary emergency circumstances, it is clear that the doctrine

of qualified immunity would require dismissal of his complaint.  Qualified immunity

shields government officials from individual liability for performing discretionary

functions, unless their conduct violates clearly established statutory or constitutional

rights of which a reasonable person would have known.  Colston v. Barnhart, 130 F.3d 96, 98 (5th Cir. 1997); Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532-33 (5th Cir. 1997) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

A qualified immunity defense is analyzed under a two-step process.  Jacobs v. West Feliciana Sheriff's Dep't, 228 F.3d 388, 393 (5th Cir. 2000); Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir. 1998).  The first step is to determine whether plaintiff has alleged a violation of a clearly established constitutional right.  Jacobs, 228 F.3d at 393; Hare, 135 F.3d at 325.

The second step requires the court to determine whether defendants' conduct was objectively reasonable under existing clearly established law.  Jacobs, 228 F.3d at 393; Foster v. City of Lake Jackson, 28 F.3d 425, 429 (5th Cir. 1994).  In the absence of any allegation of a violation of a clearly established right, defendant is entitled to qualified immunity, and the court need not consider the second question.  Id. at 428-29.

For all of the reasons discussed above, Hines fails adequately to allege a violation of a clearly established constitutional right.  In addition, however, defendant's conduct in taking Hines, a charged hurricane looter who was later convicted of that offense, to a hastily established and necessarily rough temporary detention facility at a time when area jails, like almost everything else, had been damaged or closed down by the hurricane, was objectively reasonable.  The conditions Hines described were necessitated by the

22

extraordinary emergency situation wrought by the storm and its effects, which effects Hines exacerbated by his own opportunistic criminal misconduct.   At least as to convicted Hurricane Katrina looter Frederick Hines, defendants' conduct was objectively reasonable.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United

Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___16th___ day of February, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

24